IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Roselyn Wise,<br><br>Plaintiff,<br><br>v.<br><br>Columbia Housing Authority, Cynthia Gore, Latoya Nix, Bobby Brown, and Barry Hall,<br><br>Defendant. | C.A. No.: 3:24-cv-04066-MGL-PJG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

COMES NOW, Defendants Cynthia Gore ("Ms. Gore"), Latoya Nix ("Ms. Nix"), Bobby Brown ("Mr. Brown") and Barry Hall ("Mr. Hall") (hereinafter collectively referred to as the "Individual Defendants") and Columbia Housing Authority ("CHA") (hereinafter collectively referred to as "Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of its Motion for Summary Judgment in the above-captioned matter.

Plaintiff, Roselyn Wise (hereinafter "Plaintiff" or "Ms. Wise"), filed the present action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et. seq*., along with State law claims of civil conspiracy and defamation. Based on the information obtained in discovery, Plaintiff's allegations are unsupported by the evidence in the record.

## STATEMENT OF THE FACTS

At all times relevant to the Complaint, from 2021 to 2025, CHA employed Plaintiff as a Property Specialist. (Exhibit 1: Ivory Matthews' Letter to Roselyn Wise dated June 22, 2020). Plaintiff's job duties and responsibilities as a Property Specialist included, but were not limited to, the following:

1. Greeting housing residents, applicants and the public with professional courtesy, tact and respect;
2. Providing customer service to residents; answering incoming calls from the general public; responding to inquiries regarding program information; and explaining eligibility requirements to applicants;
3. Assisting the Community Manager by researching and obtaining necessary documentation or data when requested; and completing special projects related to housing management activities as needed;
4. Conducting the re-certification process; and maintaining files and correspondence associated with re-certification process for public housing residents;
5. Scheduling appointments for interviews; computing new rents; and assisting in interviewing prospective applicants for low-rent and assisted housing;
6. Showing vacant units to applicants; and providing applicants with information about the apartment, community, amenities and other information;
7. Participating in quarterly extermination inspections; and
8. Performing other related work duties as assigned.

(Exhibit 2: CHA Property Specialist Position Description). At all relevant times, Plaintiff's direct supervisors were as follows:

1. From March 16, 2021, through June 25, 2021, Tierra Hilton ("Ms. Hilton") was the Regional Manager of CHA's Portfolio B and directly supervised Mr. Brown, who was a Community Manager within Portfolio B who directly supervised Plaintiff in her capacity as Property Specialist;

2. From June 25, 2021, through January 24, 2023, Gloria Warner ("Ms. Warner") was the Regional Manager of CHA's Portfolio B and directly supervised Mr. Brown, who was a Community Manager within Portfolio B who directly supervised Plaintiff in her capacity as Property Specialist;

3. From January 24, 2023, through April 28, 2023, Ms. Nix was the Senior Vice President ("SVP") of Property Management and Maintenance Operations and directly supervised Ebony Mobley ("Ms. Mobley"), who was a Community Manager within CHA's Portfolio A. Ms. Mobley directly supervised Plaintiff in her capacity as Property Specialist.

4. From April 28, 2023, through February 2, 2024, Ms. Nix was the SVP of Property Management and Maintenance Operations and directly supervised Plaintiff, who was a Property Specialist within CHA's Portfolio A. The Community Manager Position that typically supervised Plaintiff was vacant at this time.

5. After February 2, 2024, Ms. Nix was the SVP of Property Management and Maintenance Operations and directly supervised Sharon Evans ("Ms. Evans"), who was a Community Manager within CHA's Portfolio A. Ms. Evans directly supervised Plaintiff in her capacity as Property Specialist.

(Exhibit 3: CHA Organization Charts dated March 16, 2021, through March 25, 2025). From March 16, 2021, Ms. Gore served as the Vice President ("VP") of Human Resources ("HR") and directly supervised Selina Hart, who was the HR Analyst. (Id.).

From March 16, 2021, through March 24, 2022, Ivory Matthews ("Ms. Matthews") was the Chief Executive Director ("CEO") of CHA, who supervised Yvonda Bean ("Ms. Bean") in her capacity as the Chief Operating Officer ("COO") of CHA. (Id.). During this time, Ms. Bean supervised Ms. Nix in her capacity as the SVP of Property Management and Maintenance Operations. (Id.).

From March 24, 2022, through September 19, 2022, Demetria Simpson ("Ms. Simpson") became the Interim COO. (Id.). From September 19, 2022, through June 21, 2023, the COO position was vacant. (Id.). From June 21, 2023, through March 25, 2025, Mr. Hall served as the COO. (Id.). From March 25, 2025, through the remainder of the relevant periods, Mr. Hall served as the CEO and the COO position was vacant. (Id.).

***Title VII Harassment, Sex Discrimination and Retaliation (against Defendant CHA)***

On February 1, 2024, Plaintiff filed a "Discrimination, Harassment and/or Retaliation Complaint Form" alleging claims of discrimination, harassment and retaliation from Ms. Nix, as Senior Vice President of Property Management and Maintenance Operations, and Ms. Gore, Chief HR Officer. (Exhibit 4: Barry Hall Letter to Roselyn Wise dated March 19, 2024). Plaintiff's allegations in the Complaint included the following:

1. Plaintiff was opposed to allegedly "unannounced" and "pop-up" meetings with her supervisors and/or HR to discuss personnel matters;
2. Plaintiff was allegedly being questioned and counseled regarding her leave usage;

3. Plaintiff alleged that she was blamed for not answering the office telephone calls;
4. Plaintiff alleged that she was subjected to threatening behavior and "body language" that was allegedly displayed by Ms. Nix and Ms. Gore as a means to hurt, intimidate and punish Plaintiff;
5. Plaintiff alleged that she was "punished" by not being paid for a holiday;
6. Plaintiff alleged that she received an invalid and unfair performance rating; and
7. Plaintiff alleged that she was subjected to retaliation due to her use of FMLA sick leave.

(Id.). On March 18, 2024, Mr. Hall met with Plaintiff to obtain clarification of her allegations regarding body language that was threatening, hurtful and punishing towards her. (Id.). However, Plaintiff did not provide Mr. Hall any clear, direct examples of this alleged behavior. (Id.).

Plaintiff also alleges that CHA's employees denied her employment opportunities during her employment with CHA due to her and sex. (ECF No. 96 pp. 13-14, ¶ 59-60). From June 22, 2020, through June 25, 2025, Plaintiff applied for the following positions within CHA: (a) Property Specialist; (b) Community Manager; (c) Senior Property Specialist; (d) Accounting Analyst; and (e) Regional Property Manager. (Exhibit 5: Roselyn Wise Position Interviews Screenshots). The Individual Defendants, along additional CHA management personnel, interviewed and considered Plaintiff for each position listed above. (Id.).

Specifically, on November 3, 2020, Ms. Gore informed Plaintiff that the Landlord Liaison position had been filled two (2) days after she applied. (Exhibit 6: Cynthia Gore Email to Roselyn Wise dated November 3, 2020). On June 2, 2021, Ms. Gore informed Plaintiff that she was not qualified for the Regional Property Manager position because she did not have the required experience at that time. (Exhibit 7: Cynthia Gore Email to Roselyn Wise dated June 2, 2021).

On October 10, 2022, Ms. Gore informed Plaintiff that interviews for the Accounting Analyst position were already held prior to her application. (Exhibit 8: Cynthia Gore Email to Roselyn Wise dated October 10, 2022). On October 18, 2023, Ms. Nix informed Plaintiff that a

female applicant, Ms. Evans, had been selected for the Community Manager position because she was well trained in certain areas of property management, such as tax credit and property-based vouchers. (Exhibit 9: Latoya Nix Email to Roselyn Wise dated October 18, 2023).

On November 18, 2024, Mr. Hall informed Plaintiff that the Senior Property Specialist position would not be filled due to changes in CHA's reposition plan, which would disperse the units that were then "Business Activities" among CHA's new properties as they were developed. (Exhibit 10: Barry Hall Email to Roselyn Wise dated November 18, 2024). On April 1, 2025, Mr. Hall informed Ms. Wise that CHA would be removing the Senior Property Specialist position due to reorganization. (Exhibit 11: Barry Hall Email to Roselyn Wise dated April 1, 2025).

Additionally, Plaintiff alleges that Mr. Hall retaliated against her when he denied her the opportunity to serve on a Safety Committee for CHA. (ECF No. 96 p. 14, ¶ 62; Wise Depo. pp. 217:16-218:9). Specifically, on June 26, 2025, in response to Plaintiff's request, Mr. Hall informed Plaintiff that the Safety Committee currently had a sufficient number of volunteers. (Exhibit 12: Barry Hall Email to Roselyn Wise dated June 26, 2025). Mr. Hall further stated that Plaintiff could be considered if a slot opens up. (Id.). Plaintiff alleges that Mr. Hall's denial of her request was in retaliation for her filing an Occupational Safety and Health Administration ("OSHA") complaint. (Wise Depo. pp. 218:7-9; 225:4-7). However, Plaintiff testified that she based this allegation of retaliation solely on statements allegedly made to her by CHA's Security Manager, Chief Damian White ("Chief White"), and not any observations she made herself. (Wise Depo. p. 226:1-5).

Plaintiff also alleges that CHA discriminated against her on the basis of her sex by allegedly denying her a promotion and raise. (Wise Depo. p. 227:1-8). Specifically, Plaintiff alleges that she did not have an opportunity to apply for the Superintendent of Maintenance position. (Wise Depo. pp. 227:23-228:1). Plaintiff alleges that a male, Mr. Bobby Brown (Mr. Brown), was

promoted to the position of Superintendent of Maintenance instead without the position being posted. (Wise Depo. p. 227:9-17).

When asked about her evidence to support Plaintiff's claims of sex discrimination, Plaintiff testified that Mr. Hall stated that the position was not posted and Mr. Brown was selected because of his management experience. Plaintiff contents that she was not considered because of her sex. (Wise Depo. pp. 228:24-229:16). However, Plaintiff testified that she had no evidence that the failure to post the Superintendent of Maintenance position violated any CHA policy. (Wise Depo. p. 229:22-24).

CHA's Policy 105 provides that it may "at its sole discretion" determine how it advertises its position vacancies. (Exhibit 13: CHA Policy 105 – Recruitment). Additionally, Plaintiff also testified that she did not have any maintenance experience. (Wise Depo. p. 230:14-15). Plaintiff also testified that she could not say whether Mr. Brown had maintenance experience or not. (Wise Depo. p. 231:19-21). Plaintiff further testified that she was not sure what Mr. Hall's thought process was when he chose Mr. Brown to fill the Superintendent of Maintenance position. (Wise Depo. p. 234:20-25). Plaintiff alleges that Mr. Hall discriminated against on the basis of sex because she never received written feedback after she was not chosen for the Superintendent of Maintenance position. (Wise Depo. p. 235:7-12). However, Plaintiff was never a candidate for the position and, thus, written feedback was not required.

On May 8, 2025, Ms. Evans recommended that Plaintiff receive a promotion and corresponding salary increase for earning a degree in legal studies. (Exhibit 14: Roselyn Wise Request for Pay Increase). Ms. Nix, Ms. Gore and Mr. Hall each reviewed Plaintiff's request and determined that she was not eligible for a salary increase because the Property Specialist position does not require or utilize a law degree as part of its essential duties and responsibilities.

(Exhibit 15: CHA's Response to Roselyn Wise's Pay Increase Request). As such, Plaintiff's pay increase request was denied.

***Violation of FMLA (against Defendant CHA)***

Plaintiff alleges that after using FMLA leave, Defendants treated her in a hostile manner. (ECF 96 p. 16, ¶ 67). Specifically, Plaintiff alleges that CHA's employees: (a) made Plaintiff move out of a handicapped parking space while allowing other employees to park with no handicapped signs or plates; (b) questioned Plaintiff about her FMLA leave and past absences reporting; (c) told Plaintiff to put time into ADP and then later falsely accused her of having an attendance problem. (Id.).

On July 18, 2023, CHA approved Plaintiff's FMLA leave request. (Exhibit 16: Selina Hart Letter to Roselyn Wise dated July 18, 2023). Specifically, Plaintiff took consecutive FMLA leave from June 2023 to September 2023. (Wise Depo. p. 194:17-6). Although Plaintiff alleges that Ms. Nix retaliated against her for FMLA leave by not allowing her to use a handicap spot, Plaintiff testified that she did not have a handicap parking space decal. (Wise Depo. p. 195:8-19).

Plaintiff also alleges that she was retaliated against by having a meeting with Ms. Nix and Ms. Gore concerning her use of sick time. (Wise Depo. pp. 195:24-196:2). Specifically, in January 2024, Plaintiff filed a Complaint alleging that Ms. Nix and Ms. Gore intimidated and harassed her regarding her use of sick leave. (Wise Depo. p. 242:6-11). Specifically, Plaintiff alleges that Ms. Nix and Ms. Gore questioned her regarding whether she communicated with Ms. Evans about her sick time and informed Plaintiff that she needed to submit sick time requests a week in advance. (Wise Depo. pp. 211:18-212:4; 242:12-22). Plaintiff admitted that Ms. Nix and Ms. Gore, within their job duties, were able to discuss concerns about the time Plaintiff came to work, her leave, and her attendance. (Wise Depo. p. 210:16-23). Plaintiff also alleges that Ms. Nix violated FMLA because Ms. Nix attempted to write her up for an attendance issue. (Wise Depo. pp. 215:8-216:7).

Further, Plaintiff alleges that Ms. Nix and Sharon Evans agreed upon a staggered work schedule where Plaintiff would work 40 hours a week. (Wise Depo. p. 208:12-24). Plaintiff agreed that if she went outside of the alleged staggered schedule, Ms. Nix or Ms. Gore were able to discuss with her about the time she was coming into work. (Wise Depo. p. 210:16-23). Specifically, Plaintiff alleges that Ms. Nix verbally agreed to change her schedule while still working during work hours. (Wise Depo. p. 201:16-19). However, Ms. Gore informed Plaintiff that "[e]mployees may not work through a meal or break periods to shorten the normal workday or extend lunch period." (Exhibit 17: Cynthia Gore's Email to Roselyn Wise dated November 18, 2021). Plaintiff testified that her typical work schedule was from 8:00 AM to 5:00 PM. (Wise Depo. p. 204:12-14).

Plaintiff also alleges that Defendants violated FMLA by asking for doctor notes after she had allegedly given Defendants the information that was needed for her to take FMLA leave. (Wise Depo. p. 206:1-8). However, Plaintiff agreed that CHA's policies required her to submit doctor notes with her FMLA leave application. (Wise Depo. p. 206:16-19).

***Civil Conspiracy (against the Individual Defendants)***

Plaintiff alleges that the Individual Defendants met, conspired and schemed to cause Plaintiff harm. (ECF 96, p. 19, ¶ 88). The Individual Defendants were employed by CHA as follows: Ms. Gore was the Chief HR Officer; Ms. Nix was the Regional Manager and SVP of Property Management and Maintenance Operations; Mr. Brown was a Community Manager; and Mr. Hall was the COO and Interim CEO. (ECF 96 ¶ 4-5; ECF 114, ¶¶ 3-6). Each Individual Defendants' job descriptions require them to meet and discuss personnel matters. All actions by the Individual Defendants within the scope of their employment with CHA are considered by law to be the acts of CHA itself. (See Wise Depo. pp. 71:21-24; 129:17-19; 130:8-10; 130:11-13; 130:14-17; 133:9-12; 133:13-17, 135:18-136:9; 136:10-14; 137:7-10; 137:10-12; 148:9-10; 138:18-144:21; 149:21-23; 226:16-19).

Plaintiff asserted that the only information that she relied on to claim Civil Conspiracy was from her being told what happened at a meeting by her supervisor and not her own perspective. (Wise Depo. pp. 117:10-118:1). Having such meetings regarding employee matters were within the scope of each of the Individual Defendants' job descriptions.

***Defamation (against the Individual Defendants)***

Plaintiff alleges that, during the course of her employment with CHA, she was subjected to false, harmful, and defamatory statements made by Mr. Brown, and facilitated or repeated by Ms. Gore and Ms. Nix, to third parties. (ECF No. 96, p. 24, ¶ 113[sic])

Specifically, Plaintiff alleges that Mr. Brown stated to Sharon Evans that she "better watch out for [Plaintiff] because [she will] go to HR on you." (Wise Depo. p. 69:1-4). Plaintiff also alleges that Mr. Brown stated to Ms. Evans that "Plaintiff transferred and [did not] tell him [that she] was leaving." (Wise Depo. p. 69:5-6). Plaintiff testified that she did not hear these statements directly but was told about them by Ms. Evans. (Wise Depo. p. 69:7-20).

Plaintiff also alleges that on May 28, 2024, Mr. Brown sent out an email to her coworkers alleging that Plaintiff had a document locked that no one else could get into it. (Wise Depo. pp. 77:15-78:13). Specifically, Mr. Brown stated the following in the email:

> Please note that when you are using HAB forms, please close them after use. If not, you affect the entire team. As up can see this document is locked by Roselyn Wise. I'm not sure if she is still at work, however I'm not able to print this document. Please have this concern corrected due to the time restrictions we have with recertification and Utility changes deadlines.

(Exhibit 18: Bobby Brown Email to Sharon Evans and Roselyn Wise dated May 28, 2024). Additionally, Mr. Brown included a screenshot that stated, "locked for editing by 'Roselyn Wise.'" (Id.). Plaintiff alleges that the information contained in the email "was not on a need-to-know basis" when it was sent to the management team. (Wise Depo. pp. 80:24-81:15). However,

Plaintiff could not point to any CHA policy that was violated by including the management team in the email. (Wise Depo. 120:6-9).

On February 21, 2023, Plaintiff violated CHA's Employee Code of Conduct when she threatened another CHA employee, Ivan Carter. (Exhibit 19: Disciplinary Action Form dated March 16, 2023). Plaintiff alleges that, during the investigation into the incident involving Mr. Carter, Ms. Gore "went back and kept questioning [Chief White] trying to make it seem as if [Plaintiff] was the initiator." (Wise Depo. pp. 69:21-70:9; 71:9-10). Specifically, Plaintiff alleges that "after [Chief White] said [Plaintiff was not] the initiator, [Ms. Gore] came back and asked was Roselyn the initiator of the situation." (Id.). Plaintiff alleges the question, "Was Ms. Wise the initiator?" alone attempts to create doubt in the person who is providing the information to make it seem like Plaintiff was the initiator. (Wise Depo. pp. 70:15-71:2). Plaintiff testified that her understanding of what Ms. Gore said came from Chief White and not her own observations. (Wise Depo. pp. 72:23-73:5).

Plaintiff alleges that Ms. Nix was also a part of the conversation between Ms. Gore and Chief White as stated above. (Wise Depo. p. 74:9-16). Specifically, Plaintiff alleges that Ms. Nix asked about Plaintiff being the aggressor in the situation involving Mr. Carter. (Id.). Plaintiff alleges that Chief White informed her about Ms. Nix's question. (Wise Depo. p. 74:20-21).

Plaintiff alleges that Ms. Nix and Ms. Gore attempted to make Ms. Evans believe that Plaintiff intentionally missed a training. (Wise Depo. p. 75:17-23). Plaintiff testified that she did miss the training. (Wise Depo. p. 75:25-76:1). Plaintiff alleges that Ms. Evans told her that Ms. Nix and Ms. Gore made it seem like Plaintiff intentionally missed the training after it was allegedly explained that she did not. (Wise Depo. p. 77:7-14).

On July 7, 2025, Plaintiff alleges that Ms. Gore sent her an email accusing her of attempting to be paid for time she did not work, which CHA's Accountant Specialist, Lynn Figgures,

forwarded to HR. (ECF 96 p. 25, ¶ 119[sic]). Plaintiff alleges that Ms. Gore never asked for her side of the story and instead shared a false claim with other employees that did not need to know. (Id.). Plaintiff testified that she was not seeking to get paid for the 33 minutes she worked on July 3, 2025. (Wise Depo. p. 91:6-20). It was within the scope of Ms. Gore's employment to investigate employee concerns (Wise Depo. pp. 71:21-24; 129:17-19).

***ADA Discrimination – Failure to Accommodate and Retaliation (against Defendant CHA)***

Plaintiff alleges that CHA denied her request for reasonable medical accommodations when she was returning from sick leave in August of 2022. (ECF 96, p. 27, ¶ 128[sic]-101[sic]). Specifically, Plaintiff alleges that she requested an accommodation as she suffers from scoliosis and COVID-19. (Wise Depo. p. 157:12-19). However, Plaintiff acknowledged that COVID-19 is not considered a disability. (Wise Depo. p. 157:20-21).

Plaintiff requested to work in cool temperatures for approximately two (2) weeks upon her return to work from sick leave. (ECF No. 102, p. 3, ¶ 19; Wise Depo. 159:18-21). At the time, Plaintiff was responsible for conducting housing inspections. (Id.). Although Plaintiff alleges that her job responsibilities allowed her to either walk properties to conduct inspections or recertify files, she acknowledged that Mr. Brown assigned her daily work at the time. (Wise Depo. 160:7-20). Plaintiff testified that during the inspection period, her job is primarily out of the office. (Wise Depo. 162:13-14). Specifically, on August 11, 2022, Ms. Gore informed Plaintiff that

> [P]erforming inspections is an essential part of [her] job. Currently, all community areas are focused on doing inspections for their areas, in preparation for the upcoming HUD check-up. Since you need to be in an air-conditioned environment for the next 2 weeks and since performing inspections requires you to go in and out of units, [CHA] is accommodating you by allowing you to take leave for the next 2 weeks.

(Exhibit 20: Cynthia Gore Letter to Roselyn Wise dated August 11, 2022). As such, based on the doctor's instructions, CHA allowed Plaintiff to take leave as an accommodation due to her inability to perform an essential function of her job. (ECF No. 102, p. 3, ¶ 19). On August 15, 2022, Plaintiff

emailed Ms. Bean stating that she did not want take the two (2) week leave accommodation offered by CHA. (Exhibit 21: Roselyn Wise Email to Yvonda Bean dated August 15, 2022). Although Plaintiff alleges that CHA never talked to her about other options, on August 16, 2022, Ms. Gore informed Plaintiff that she had office work to perform beginning August 18, 2022. (Exhibit 22: Cynthia Gore Letter to Roselyn Wise dated August 16, 2022). Plaintiff acknowledged that leave is an allowable accommodation under the ADA. (Wise Depo. p. 187:15-18). Plaintiff also did not present any evidence of missed deadlines during her absence. (Wise Depo. pp. 193:22-194:3). On September of 2022, Plaintiff filed a complaint with the United States Department of Labor despite CHA providing her with a reasonable accommodation. (ECF No. 102, p. 3, ¶ 20).

## STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). Material facts are facts that are evidence of the existence or non-existence of which would impact the disposition of the claim under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Under Rule 56, the moving party bears the initial burden of asserting the basis for its motion, "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits; if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this burden is discharged, the nonmoving party must "go beyond the pleadings and by her own affidavits," or by the "depositions, answers to interrogatories, and admission on file," designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The party moving for summary judgment does not bear the burden to produce evidence showing the absence of a genuine

issue of material fact; instead, the burden of the moving party may be discharged by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotations omitted).

In considering a motion for summary judgment, "the judge's function is not. . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, "the judge must ask. . . whether a fair minded jury could return a verdict for the [nonmoving party] on the evidence presented. Id. at 252. While evidence should be viewed in the light most favorable to the nonmoving party, a "mere scintilla" of evidence will not preclude summary judgment. Id. Conclusory statements, without specific evidentiary support, are insufficient to create a genuine issue of material fact. Causey v. Balog, 162 F.3d 795 (4th Cir. 1998).

"In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor." Addison v. CMH Homes, Inc., 47 F.Supp.3d 404, 416 (2014) (citing Dennis v. Columbia Colleton Med. Ctr. Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court must "determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's cause on its own terms." Addison, at 416.

## ARGUMENT

### I. PLAINTIFF'S TITLE VII CLAIMS OF DISCRIMINATION AND RETALIATION FAIL BECAUSE PLAINTIFF CANNOT PRESENT ANY EVIDENCE OF AN ADVERSE EMPLOYMENT ACTION TAKEN BECAUSE OF HER SEX.

Defendants are entitled to Summary Judgment as to Plaintiff's Title VII claims because Plaintiff cannot provide any evidence that CHA took an adverse employment action was taken because of her or sex.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to fail to refuse to hire, to discharge any individual, or to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. §2000e-2(a)(1). For purposes of Title VII, "an adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Terry v. Perdue, 2021 U.S. App. Lexis 23223 (4th Cir. 2021) (quoting Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). S.C. Code Ann. § 8-17-330 provides that "an employee may file a grievance or appeal concerning the following adverse employment actions: terminations, suspensions, involuntary reassignments, and demotions." S.C. Code Ann. § 8-17-330.

Here, Plaintiff has not provided any direct evidence supporting her claims that the Individual Defendants took any adverse action against Plaintiff because of her sex. Specifically, although Plaintiff alleges that she was not hired for the Superintendent of Maintenance position, she testified that she had no evidence as to what Mr. Hall's thought process was when he hired Mr. Brown for the position instead. (Wise Depo. Pp. 228:24-229:24). In fact, Plaintiff testified that Mr. Hall told Mr. Brown that he best fit the Superintendent of Maintenance position due to his management experience. Id. Additionally, Plaintiff testified that she did not have any maintenance experience. As such, Plaintiff provided no direct evidence showing that she was discriminated against on the basis of her sex when the Superintendent of Maintenance position was filled. (Wise Depo. P. 230:14-15).

Plaintiff also alleged that CHA discriminated against her on the basis of her sex by denying her May 8, 2025, pay raise request. CHA denied Plaintiff's pay raise request because the Property Specialist position does not require or utilize a law degree as part of its essential duties and

responsibilities. (See Exh. 15). As such, Plaintiff provided no direct evidence showing that she was discriminated against on the basis of her sex when her pay raise request was denied.

## II. CHA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII RETALIATION CLAIM BECAUSE PLAINTIFF HAS FAILED TO PRODUCE ANY EVIDENCE THAT SHE ENGAGED IN PROTECTED ACTIVITY, THAT THERE IS A CAUSAL LINK BETWEEN THE ALLEGED PROTECTED ACTIVITY AND ANY ALLEGED ADVERSE EMPLOYMENT ACTION OR THAT THE LEGITIMATE, NON-DISCRIMINATORY, NON-RETALIATORY REASON GIVEN WAS PRETEXT.

The U.S. Supreme Court has determined that, in asserting a Title VII action, a plaintiff may proceed under ordinary principles of proof using direct evidence. In the absence of direct proof of a defendant's intent to discriminate, a plaintiff may employ the burden-shifting scheme outlined in McDonnel Douglas v. Green, 411 U.S. 792 (1973).

The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor. . . ." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995). In establishing evidence of discrimination, derogatory remarks may constitute direct evidence, as long as the remarks were related to the employment decision in question and were not stray or isolated. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999).

In the absence of direct evidence of discrimination, McDonnell Douglas provides a burden-shifting analysis. First, the plaintiff must establish a prima facie case of discrimination. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Once a prima facie case is made, the burden of proof shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its actions. Id. After the defendant produces evidence to this effect, the burden shifts

back to the plaintiff to prove "at a new level of specificity" that the reason articulated by the employer is not true but is merely a pretext for discrimination. St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502 (1993) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981)). The ultimate burden of persuasion at all times remains with the plaintiff. See Burdine, 450 U.S. at 253.

Here, Plaintiff has not provided any direct evidence supporting her claims that the Individual Defendants took any adverse action against Plaintiff because of her sex. Thus, Plaintiff must rely on the McDonnell Douglas burden-shifting analysis. Pursuant to the McDonnell Douglas burden-shifting analysis, Plaintiff must set forth evidence sufficient to establish as *prima facie* case for each cause of action pursuant to Title VII.

**A. Plaintiff cannot establish a *prima facie* case for retaliation pursuant to Title VII.**

Plaintiff is unable to establish a *prima facie* case for retaliation pursuant to Title VII. Thus, summary judgment is appropriate in this matter.

Title VII declares it unlawful for a governmental employer to retaliate against an employee because he "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. See 42 U.S.C. § 2000e-3(a). Summary judgment is appropriate on a claim for retaliation under Title VII, where a plaintiff fails to demonstrate that "(1) he engaged in a protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal connection between the first two elements." Duncan v. Va. Dep't of Corr., 9 F. App'x 236, 238 (4th Cir. 2001) (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745,754 (4th Cir. 1996)). Close temporal proximity between the protected activity and the adverse employment action can satisfy the causal requirement. Hemphill v. UPS, F. Supp.2d 548 (D.S.C. 2013).

**1. Plaintiff did not participate in any protected activity prior to the alleged adverse action and therefore, her claim for retaliation fails.**

Under Title VII, an employee engages in protected activity when he either "oppose[s] any practice made an unlawful employment practice by [Title VII] or ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]." See 42 U.S.C. § 2000e-3(a). Protected activities fall into two distinct categories under Title VII's anti-retaliation provision: (1) opposition to an employer's discriminatory employment practices ("opposition clause"); or (2) participation in an ongoing investigation or proceeding conducted pursuant to Title VII ("participation clause"). To constitute protected activity, "a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law." Addison at 427.

Here, Plaintiff did not participate in any protected activity. Plaintiff's did not apply for the Superintendent of Maintenance position because CHA used its discretion and did not post the position. (Wise Depo. pp. 227:23-228:1). Therefore, Plaintiff did not participate in any activity in relation to CHA's decision to hire Mr. Brown to fill the Superintendent of Maintenance position. Additionally, Plaintiff's pay raise request was neither in opposition to any discriminatory employment practice by CHA or participation in any ongoing investigation or proceeding conducted pursuant to Title VII. (See Exh. 15). As such, Plaintiff has failed to produce any evidence of any participation in protected activity that occurred prior to any alleged adverse action.

In light of Plaintiff's failure to produce evidence of any protected activity, her claim for retaliation under Title VII fails and summary judgment is appropriate.

**2. Even assuming Plaintiff engaged in protected activity pursuant to Title VII, Plaintiff failed to produce any evidence of a causal link between CHA's actions and her sex.**

Plaintiff cannot establish a causal link between the CHA's decisions to hire Mr. Brown for the Superintendent of Maintenance position and to deny her raise, and her sex.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Addison at 427. (quoting Univ. Of Tex. Sw. Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). To prove causal connection, "a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action 'because the plaintiff engaged in a protected activity.'" Id. (citing Holland, 487 F.3d at 218). Temporal evidence alone cannot establish causation for a prima facie case of retaliation, unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Here, Mr. Hall informed Plaintiff that CHA selected Mr. Brown for the Superintendent of Maintenance position because of his management experience. Plaintiff testified that she lacked any maintenance experience required for the position. Additionally, Plaintiff's job duties as a Property Specialist did not require her to obtain a law degree. As such, CHA's decisions were would have been the same in the absence of any retaliation.

Accordingly, Plaintiff has failed to produce any evidence of a connection between CHA's decisions to hire Mr. Brown for the Superintendent of Maintenance position and to deny her raise, and her alleged claim of sex discrimination. As such, Plaintiff's claim for retaliation under Title VII fails as a matter of law, and summary judgment is appropriate.

**B. Even if Plaintiff can establish a *prima facie* case for retaliation, CHA has articulated a legitimate, non-discriminatory, non-retaliatory reason for its decisions.**

As stated above, Mr. Hall informed Plaintiff that CHA selected Mr. Brown for the Superintendent of Maintenance position because of his management experience. (Wise Depo. pp. 228:24-229:16). Plaintiff testified that she lacked any maintenance experience required for the

position. (Wise Depo. p. 230:14-15). Additionally, Plaintiff's job duties as a Property Specialist did not require her to obtain a law degree. (See Exh. 15). As such, CHA's decisions were would have been the same in the absence of any retaliation.

Plaintiff has not produced any evidence that CHA based its decisions on her sex. CHA had an interest in selecting the most qualified candidate for the Superintendent of Maintenance position. CHA also had a responsibility to avoid incorrectly rewarding Plaintiff with a pay raise for a legal degree that was irrelevant to the essential duties of her job.

Therefore, even if Plaintiff satisfied the *prima facie* elements of retaliation, CHA has provided a non-discriminatory, non-retaliatory reason for its decisions.

**C. Plaintiff cannot prove that CHA's reason for its decisions are pretext.**

Plaintiff has failed to produce any evidence that CHA's legitimate, non-discriminatory, non-retaliatory reason for its decisions was pretext for retaliation.

Once the employer articulates a legitimate, non-discriminatory reason. . .the employee must present evidence that the employer's reason was pretext and that the employer's conduct was actually motivated by illegal considerations. Chalmers v. Tulon Co., 101 F.3d 1012 (4th Cir. 1996). The Plaintiff must prove with "a new level of specificity" that the reason articulated by the employer is not true but merely pretext. To establish that the employer's decision was pretext, the plaintiff must prove that "both the reason was false, and that discrimination was the real reason." Adams v. Trs. Of the Univ. of N. Carolina-Wilmington, 640 F.3d 550 (4th Cir. 2011) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir. 1995)). The employee must adduce evidence from which a jury could reasonably conclude that the reason articulated by the employer is not the true reason, and that the employer's decision was motivated by illegal considerations. See Burdine, 450 U.S. 248. The ultimate burden of persuasion lies with the employee, to show by a preponderance of the evidence that the proffered reason was pretext for discrimination. Causey,

162 F.3d 795. Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. Hemphill v. United Parcel Serv., Inc., 975 F. Supp.2d 548, 559 (D.S.C. 2013). The Plaintiff must prove that retaliation was the actual reason. Foster v. Univ. of Maryland-Eastern Sore, 787 F.3d 243, 253 (4th Cir. 2015).

Here, Plaintiff has not presented any evidence creating a genuine issue of fact that the reason given by CHA was pretext. Plaintiff's sole contention that the reason given by CHA was pretext is her belief that the Individual Defendants did not was her to be promoted based on her sex. Plaintiff has not presented any evidence to case doubt on the reasons given by CHA.

Therefore, to the extent that Plaintiff has satisfied the *prima facie* elements for retaliation, Plaintiff has failed to show that CHA's legitimate, non-discriminatory, non-retaliatory reason for its decision was pretext for retaliation. Thus, Plaintiff's claim fails as a matter of law. Accordingly, summary judgment in favor of Defendants is appropriate in this matter.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIF'S SEX DISCRIMINATION CLAIMS BECAUSE PLAINTIFF FAILED TO PRODUCE ANY EVIDENCE TO SHOW THAT SHE SUFFERED FROM A HOSTILE WORK ENVIRONMENT BECAUSE OF HER SEX.

Plaintiff's claim sex discrimination fails because the record is devoid of any evidence showing that CHA discriminated against her because of her sex.

### A. Plaintiff cannot establish a *prima facie* case of sex discrimination under Title VII.

Plaintiff has failed to establish a *prima facie* case that CHA discriminated against her based on her sex; thus, her sex discrimination claim fails.

Under McDonnell Douglas, where a plaintiff alleges that her employer failed to promote her in violation of Title VII, the plaintiff must establish that (1) she is a member of a protected

class; (2) she applied for a position for which her employer was seeking applications; (3) she was qualified for that position; and (4) she was denied the promotion under circumstances that give rise to an inference of discrimination. Haywood v. Locke, 387 F. App'x 355, 358 (4th Cir. 2010); see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996) (citing McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824). "If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote." Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004).

Here, Plaintiff was a member of a protected class as a woman. However, Plaintiff never applied for the Superintendent of Maintenance position. As such, Plaintiff cannot establish a *prima facie* claim for failure to promote.

**B. To the extent Plaintiff seeks to raise a claim of hostile work environment, Plaintiff's claim fails because Plaintiff fails to produce any evidence of unwelcome conduct that was sufficiently pervasive to alter her conditions of employment.**

Plaintiff has failed to establish a *prima facie* case of hostile work environment as she cannot show that Defendants engaged in any unwelcome conduct that was sufficient, severe or pervasive.

To prevail on a Title VII of the Civil Rights Act of 1964 claim that a workplace is hostile, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015).

Plaintiff has failed to articulate any unwelcome conduct based on her sex sufficiently severe or pervasive to alter her conditions of employment sufficient to establish a *prima facie* case for a hostile work environment. The Individual Defendants each met with Plaintiff regarding employment matters, which was within the scope of their respective employment duties. (See

Wise Depo. pp. 91-226). Additionally, to the extent that Plaintiff relies on CHA's decisions not to hire her for certain positions, this conduct does not rise to the level of severe and pervasive conduct sufficient to establish a *prima facie* case for a hostile work environment. CHA selected the most qualified candidates.

Further, Plaintiff cannot show that any act taken by Defendants was based on her sex. Plaintiff relies only on her own beliefs and third-party hearsay to alleged any sex discrimination. Presumptions, without evidence, cannot support a discrimination claim.

### C. Plaintiff cannot demonstrate that the relevant circumstances give rise to an inference of sex discrimination.

To the extent that Plaintiff can prove any of the previously discussed elements of a *prima facie* case for sex discrimination under Title VII, Plaintiff has not produced evidence, aside from mere conclusory allegations, that would give rise to an inference of sex discrimination as to the alleged positions.

Plaintiff has provided no evidence of any discriminatory actions, statements, or motives underlying CHA's hiring decisions. When asked to identify any statements or actions supporting her allegations, Plaintiff relied on conversations she had with other CHA employees.

Accordingly, Defendants are entitled to dismissal of Plaintiff's Title VII claims as a matter of law.

## IV. DEFENDANT CHA IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA RETALIATION CLAIM BECAUSE THERE IS NO EVIDENCE THAT CHA SUBJECTED PLAINTIFF TO ANY ADVERSE ACTION BECAUSE OF HER USE OF FMLA LEAVE.

The FMLA provides proscriptive rights "that protect employees from . . . retaliation for exercising their substantive rights under the FMLA." Vannoy v. FRB of Richmond, 827 F.3d 296, 304 (4th Cir. 2016) (quoting Dotson v. Pfizer, Inc., 558 F.3d 284, 294 (4th Cir. 2009)). "FMLA

retaliation claims may rest on circumstantial evidence evaluated under the burden-shifting framework set out in McDonnell Douglas." Vannoy at 304.

### A. Plaintiff cannot establish a *prima facie* case for retaliation pursuant to the FMLA.

Plaintiff has not provided any evidence that CHA retaliated against her on the basis of her use of FMLA leave.

"An FMLA plaintiff claiming retaliation 'must first make a prima facie showing that [her] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity.'" Id. (quoting Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006). In adjudicating claims of FMLA retaliation, courts of this jurisdiction have applied Burlington N. & Santa Fe Ry. v. White in determining whether an employment action was adverse. See Beason v. S.C. Elec. & Gas Co., 2015 U.S. Dist. LEXIS 15984, at *9 (D.S.C. Jan. 23, 2015). In Burlington, the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse…" to satisfy the adverse employment action prong of the prima facie test for retaliation. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (citations omitted).

Here, Plaintiff took consecutive FMLA leave for approximately four (4) months from June 2023 to September 2023. Upon her return to the workplace, Plaintiff alleges that CHA, by its employees, took the following adverse actions against her: (a) made Plaintiff move out of a handicapped parking space while allowing other employees to park with no handicapped signs or plates; (b) questioned Plaintiff about her FMLA leave and reporting of past absences; and (c) told Plaintiff to put time into ADP[1] and then later falsely accused her of having an attendance problem.

[1] ADP is a time management system utilized by CHA.

Plaintiff's claims are without merit as there is no evidence that CHA took any adverse action because she took FMLA leave.

Plaintiff alleges that Ms. Nix retaliated against her for FMLA leave by not allowing her to use a handicap parking space, Plaintiff testified that she did not have a handicap parking space decal. As such, Ms. Nix had a non-retaliatory reason for not allowing Plaintiff to use the handicap spot. Additionally, Plaintiff alleges that Ms. Nix and Ms. Gore intimidated and harassed her by questioning her regarding whether she communicated with Ms. Evans about her sick time use and by informing Plaintiff that she needed to submit sick time requests a week in advance. However, Plaintiff testified that during the course of her employment, she had several conversations regarding the appropriate use of leave and inputting her time. Specifically, Plaintiff testified and the record reflects that she had several conversations with Ms. Gore and her supervisors, Mr. Brown and Ms. Nix, about her time and leave. (Wise. Depo. pp. 93:4-94:7). CHA's inquiry regarding Plaintiff's attendance issues and use of leave does not constitute an adverse action as CHA has a legitimate interest in ensuring that employees are following applicable attendance/leave policies and in knowing when employees will be absent beforehand so they can prepare a replacement to address the absent employees' workload. Plaintiff has not established that CHA took any adverse action against her for her use of FMLA leave.

Further, Plaintiff has not presented any evidence of a causal connection between her use of FMLA leave and any alleged action. Plaintiff asserts that after she returned from FMLA leave, CHA began questioning her use of leave; however, this is unsupported by the record. As testified to by Plaintiff, there were concerns regarding her use of leave and inputting of time unrelated to her use of FMLA leave.

Plaintiff has failed to produce any evidence of a connection between her use of FMLA leave and any alleged adverse employment action. As such, her claim for retaliation under FMLA fails as a matter of law, and summary judgment is appropriate.

### B. Even if Plaintiff can establish a prima facie case for retaliation under the FMLA, CHA has articulated a legitimate, non-discriminatory, non-retaliatory reason for any action and Plaintiff has failed to produce any evidence of pretext.

"Once the plaintiff proffers evidence establishing [her] prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" Vannoy at 304 (quoting Yashenko at 551). A plaintiff "cannot rely upon 'mere speculation or the building of one inference upon another' to establish retaliation for taking FMLA leave." Sharif v. United Airlines, Inc., 841 F.3d 199, 204 (4th Cir. 2016).

As stated above, concerns regarding Plaintiff's attendance, inputting of time, and use of leave caused CHA to conduct an inquiry. CHA has a legitimate reason for monitoring and addressing concerns related to employees' use of leave and attendance. Further, Plaintiff has not presented any evidence creating a genuine issue of fact that any of CHA's actions were false and because of her use of FMLA leave. Plaintiff's reliance on mere speculation to support her FMLA retaliation claim is insufficient to establish her FMLA retaliation claim.

Accordingly, Defendants are entitled to dismissal of Plaintiff's FMLA retaliation claim as a matter of law.

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CIVIL CONSPIRACY CLAIM BECAUSE DEFENDANTS AT ALL TIMES ACTED IN THE SCOPE OF THEIR EMPLOYMENT.

Defendants are entitled to Summary Judgment as to Plaintiff's Civil Conspiracy claim as Plaintiff has failed to present evidence that Defendants acted outside the scope of their employment and therefore, Plaintiff's claim fails as a matter of law under the intracorporate conspiracy doctrine.

"[A] plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." Paradis v. Charleston County Sch. Dist., 433 S.C. 562, 574, 861 S.E.2d 774, 780 (S.C. 2021). Under the intracorporate conspiracy doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation. Eplus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). "A civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation." McMillian v. Oconee Memorial Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006). An essential element is that the employees' actions must be outside the scope of their employment.

Here, Plaintiff alleges that the Individual Defendants met, conspired and schemed to cause her harm. However, Plaintiff has not provided any evidence that the Individual Defendants actions were outside the scope of their employment. In fact, the record reflects that the individual Defendants were required to meet and discuss matters related to Plaintiff's employment. All actions by the Individual Defendants within the scope of their employment with CHA are considered by law to be the acts of CHA itself. As such, CHA cannot conspire with itself. Moreover, Plaintiff has failed to produce any evidence of any personal motive or interest in performing any decisions made regarding Plaintiff's employment. Accordingly, Defendants are entitled to dismissal of Plaintiff's civil conspiracy claim as a matter of law.

## VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR DEFAMATION AGAINST EACH INDIVIDUAL DEFENDANT BECAUSE PLAINTIFF CANNOT PRODUCE ANY EVIDENCE TO ESTABLISH THE REQUISITE ELEMENTS OF THE CLAIM.

Defendants are entitled to Summary Judgment as to Plaintiff's claim for Defamation because Plaintiff cannot produce any evidence to establish the requisite elements of the claim.

The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. Murray v. Holnam, Inc., 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct. App. 2001). The focus of defamation is not on the hurt to the defamed party's feelings, but on the injury to his or her reputation. Id. A party asserting a claim of defamation must prove the following elements: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." Williams v. Lancaster Cty. Sch. Dist., 369 S.C. 293, 302-03, 631 S.E.2d 286, 292 (Ct. App. 2006).

**A. Plaintiff has failed to produce any evidence of any false or defamatory statement or publication of any alleged defamatory statement by the Individual Defendants to a third party.**

To allege a claim of defamation, Plaintiff must allege that the purported defamatory statement was communicated to someone other than the Plaintiff. See Williams v. Lancaster County Sch. Dist., 369 S.C. 293, 293 631 S.E.2d 286, 304 (Ct. App. 2006).

Here, Plaintiff alleges that she was defamed by false statements and painting of a false narrative to other employees by the individual defendants. Specifically, Plaintiff alleges that Mr. Brown stated to Plaintiff's supervisor, Ms. Evans, to watch out for Plaintiff because "[she] will go to HR on you" and telling Ms. Evans that Plaintiff transferred without advising him. (Wise. Depo. pp. 68:20-69:20). This hearsay statement, even if true, does not have a defamatory meaning causing injury to Plaintiff's reputation or character within her employment.

Plaintiff failed to present evidence of any defamatory statement by Ms. Gore, Ms. Nix, or Mr. Hall. Rather, Plaintiff suggests that certain actions by them attempted to present Plaintiff if a false light. South Carolina recognizes that defamation may be actionable even if it does not occur in a direct manner (i.e. no defamatory statement). Thus, an "insinuation is actionable as a positive

assertion if it is false and malicious and its meaning is plain." Cooper v. Laboratory Corp. of Am. Holdings, 150 F.3d 376, 381 (4th Cir. 1998).

Specifically, Plaintiff alleges that Ms. Gore and Ms. Nix had conversations with employees at CHA regarding Ms. Wise's performance and/or conduct in an attempt to create a false picture of her character. (Wise. Depo. pp. 69:22-71:8). Specifically, Ms. Wise testified about an instance wherein Ms. Gore and Ms. Nix, during an investigation, asked an employee multiple times whether Ms. Wise had initiated an altercation. Plaintiff contends that this was done to again present a false narrative about Plaintiff. Id. Plaintiff further alleges that an email exchange between Ms. Gore and Lynn Figgures, payroll specialist, purported to accuse Plaintiff of seeking to be paid for early release. (Wise. Depo. pp. 83:19-85:2). Plaintiff also alleges that Ms. Gore and Ms. Nix defamed her by insinuating that Plaintiff intentionally missed training. (Wise. Depo. pp. 75:17-77:14).

Plaintiff's assertions are without merit. Plaintiff admitted that Ms. Gore and Ms. Nix, within their respective positions, have a duty to conduct investigations into employee matters, to include questioning witnesses during an investigation and inquiring into employee time and leave issues. Additionally, Plaintiff admitted that she missed the training. (Wise. Depo. p. 76:1). Plaintiff cannot show that any statements or inquiries by Ms. Gore and Ms. Nix were malicious.

Further, Plaintiff has not presented any evidence that any alleged defamatory statement was published to a third party. Plaintiff's own testimony shows that discussions were held between employees during the course of their employment and not published a third party.

Plaintiff has failed to provide any evidence that the individual defendants made or published any defamatory statement regarding Plaintiff to a third party. Plaintiff relies solely on her own interpretation and inference drawn from these actions. These allegations do not rise to the level of evidence of defamation. Accordingly, Defendants are entitled to dismissal of Plaintiff's Defamation claim as a matter of law.

**B. To the extent that the individual defendants made a defamatory statement, any alleged defamatory statements were qualifiedly privileged, thereby precluding actionable publication.**

Furthermore, the publication of any alleged statement by the Individual Defendants are privileged as a matter of law.

The publication of a defamatory statement is not actionable if the publication is made under circumstances that render it subject to a conditional or qualified privilege and the privilege is not abused. See Bell v. Bank of Abbeville, 208 S.C. 490, 38 S.E.2d 641 (1946). Under South Carolina law, in determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. Id. at 493-94, 38 S.E.2d at 642-43. When one has an interest in the subject-matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. Id. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed. Id. Whether an occasion gives rise to a qualified or conditional privilege is generally a question of law for the court. Murray v. Holnam, Inc., 344 S.C. 129, 140, 542 S.E.2d 743, 749 (Ct. App. 2001). South Carolina courts have previously found the qualified privilege applies "to situations in which an employee's job performance is properly evaluated." Wright v. Sparrow, 298 S.C. 469, 474, 381 S.E.2d 503, 506 (Ct. App. 1989).

“Where the occasion gives rise to a qualified privilege, there is a *prima facie* presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded.” Swinton Creek Nursery v. Edisto Farm Credit, 334 S.C. 484, 514 S.E.2d 134. "To prove actual malice, the plaintiff must show that the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff;

or that the statements were published with such recklessness as to show a conscious disregard for [the] plaintiff[']s rights." Id. at 485, 514 S.E.2d at 134. The question of whether there has been abuse of the conditional privilege is generally an issue for the jury to decide; however, in the absence of a controversy as to the facts, it is for the court to determine. Woodward v. S.C. Farm Bureau Ins. Co., 277 S.C. 29, 32-33, 282 S.E.2d 599, 601 (1981). Similarly, if the plaintiff fails to present evidence of a genuine issue of fact as to actual malice and the qualified privilege is otherwise applicable, summary judgment may be granted. See Wright, 298 S.C. at 474, 381 S.E.2d at 507 (affirming the trial court's grant of summary judgment based on the qualified privilege applying to the alleged defamatory statements and the plaintiff failing to establish a genuine issue of material fact as to actual malice).

In this case, the publication of any alleged statement by the Individual Defendants is protected by qualified privilege. Any discussions regarding Plaintiff's conduct between CHA, Ms. Gore, Ms. Nix, Mr. Brown and Mr. Hall give to qualified privilege because they share a common interest in evaluating employee conduct, conducting ongoing investigations, and addressing employee issues. Plaintiff did not testify that any statements were made to anyone outside of CHA. Therefore, based on the record, Defendants have established that any communications were qualifiedly privileged.

Accordingly, Defendants are entitled to dismissal of Plaintiff's Defamation claim as a matter of law.

## VII. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS AS A MATTER OF LAW AS CHA PROVIDED PLAINTIFF WITH REASONABLE ACCOMMODATIONS AS REQUIRED BY THE ADA.

Plaintiff's allegation that CHA failed to provide reasonable accommodations is contrary to the evidence in the record before the Court. The evidence shows that CHA provided Plaintiff a reasonable accommodation in response to her request for allowing her to take two (2) weeks leave.

Thus, Plaintiff's failure to accommodate claim fails as a matter of law, and CHA is entitled to summary judgment.

Under Title II of the ADA, to assert a successful claim for failure to accommodate, the plaintiff must prove: (1) that plaintiff had a disability within the statutory meaning; (2) that the [covered entity] knew of the disability; (3) that reasonable accommodations would allow the plaintiff to perform the essential functions of the position; and (4) that the [covered entity] refused to make the accommodation. Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 959 (4th Cir. 2021). In failure to accommodate cases, the plaintiff bears the burden of proof on each element. Hannah v. United Parcel Serv., Inc., 72 F.4th 630, 635 (4th Cir. 2023). Here, Plaintiff testified that COVID-19 is not a disability within the statutory meaning. However, if COVID-19 is considered a disability within the statutory meaning, under the ADA, the covered entity must meaningfully participate in an interactive process to determine reasonable accommodations. Here, the only disputed issue is whether CHA failed to provide reasonable accommodations.

CHA fully discharged its obligations under Title II of the ADA by meaningfully participating in the interactive process and offering Plaintiff reasonable accommodation. The interactive process consists of an "informal dialogue between the [plaintiff] and the [covered entity] in which the two parties discuss the issues affecting the [plaintiff] and potential reasonable accommodations that might address those issues." Manning v. N.C. State University, 724 F. Supp. 3d 438, 457 (E.D.N.C. 2024) (internal citations omitted).

Here, on August 10, 2022, Plaintiff submitted a physician's statement indicating that Plaintiff should only be allowed to work in air-conditioned environments for two (2) weeks. See Exh. 20. On that same day, Plaintiff emailed Ms. Gore stating that pursuant to her doctor's instructions, she should avoid being out of the heat for the next three (3) weeks and requested that her supervisor, Mr. Brown, be notified so that he could make adjustments to the upcoming property

inspections. Id. Upon receipt and consideration of Plaintiff's request, Ms. Gore sent a letter to Plaintiff regarding her request and its impact on the essential functions for her position to conduct property inspections as a Property Specialist. In that letter, due to the ongoing inspections in preparation for a regulatory visit, CHA determined to allow Plaintiff to take leave for two (2) weeks until she could return to the office and perform inspections. Id. Subsequently, on August 16, 2022, Ms. Gore informed Plaintiff that there would be office work to perform beginning August 18, 2022, and instructed her to return to work. See Exh .22. Plaintiff returned to work at that time.

Plaintiff alleges that CHA failed to meaningful engaged in the interactive process and failed to accommodate her in violation of the ADA. Plaintiff's claims are without merit and unsupported by the record. Plaintiff's claims rely on the basis that CHA did not provide her with her requested accommodation. Specifically, Plaintiff testified to her belief that because of the physician's statement, CHA was obligated to grant her specific request. Plaintiff's contention is misplaced and unsupported by the law. A covered entity is not required to provide all, or preferred, accommodations. See 42 U.S.C. 12112(b)(5)(A), 29 C.F.R. § 1630.2(o)(3). A covered entity is required to provide, if any, reasonable accommodations. A requested accommodation is unreasonable if it would cause undue hardship. Generally, undue hardship arises when there is a significant difficulty or expense for the covered entity. 42 U.S.C. § 12111(10)(A).

Here, CHA was not required to provide Plaintiff with all or her preferred accommodations. CHA allowed Plaintiff to take leave as an accommodation and further allowed Plaintiff to return to office work during the two-week period. Accordingly, CHA is entitled to dismissal of Plaintiff's ADA failure to accommodate claim as a matter of law.

## VIII. PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE PLAINTIFF IS UNABLE TO PROVIDE EVIDENCE THAT SHE WAS SUBJECT TO ANY ADVERSE ACTION AS A RESULT OF HER REQUEST FOR AN ACCOMMODATION.

To establish a prima facie case of retaliation under the ADA, Plaintiff must establish that: (1) she engaged in a protected activity; (2) the [covered entity] took an adverse action against her; and (3) the adverse action was causally connected to the protected activity. A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011). Plaintiff bears the burden of proving the initial *prima facie* case of retaliation. If the plaintiff establishes a prima facie case of retaliation under the ADA, the burden of production shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse action under the McDonnell-Douglas framework. Hannah P. v. Coats, 916 F.3d 327, 347 (4th Cir. 2019). If the defendant provides a legitimate, non-retaliatory reason for the adverse action, the burden then shifts back to the plaintiff to provide evidence that the defendant's provided reasons are pretextual. Id.

**A. Plaintiff cannot establish a *prima facie* case for retaliation as Plaintiff has failed to produce any evidence of a causal connection between any decisions by CHA regarding Plaintiff's employment and her request for an accommodation.**

Plaintiff cannot establish a causal link between any decisions related to her employment and her request for an accommodation.

Similar to Title VII cases, under the ADA, plaintiff must establish but-for causation. To prove causal connection, plaintiff must show that her employer took the adverse action because plaintiff engaged in a protected activity. Temporal evidence alone cannot establish causation for a prima facie case of retaliation, unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (Title VII retaliation case).

Here, in her Complaint, Plaintiff alleges that she was denied promotion opportunities, excluded from committees, subjected to undue scrutiny, and treated unfairly because of her disability status and her request for an accommodation. Plaintiff has failed to produce any evidence

of any causal connection between any decision by CHA related to her employment and her disability status or request for an accommodation. Plaintiff relies on conclusory statements and her own opinion but fails to offer any evidence. As such, her claim for retaliation under the ADA fails as a matter of law, and summary judgment is appropriate.

**B. Even if Plaintiff can establish a prima facie case of retaliation, CHA has articulated legitimate, non-discriminatory, and non-retaliatory reasons for its employment decisions and Plaintiff has failed to produce any evidence of pretext.**

As discussed above, CHA articulated legitimate, non-discriminatory, non-retaliatory reasons for its employment decisions. Specifically, as it relates to Plaintiff's allegations that she was denied promotion opportunities, there is no evidence in the record that she was not selected for any position due to her disability status or request for accommodation. Rather, CHA's decisions were related to its business needs and judgment. Further, Plaintiff has failed to produce any evidence that her "exclusion" from the safety committee by Mr. Hall was because of her disability status or request for an accommodation. As indicated in Mr. Hall's response, there was not a vacancy on the committee. Plaintiff has not produced any evidence that CHA considered her disability status or request for accommodation in its decisions related to Plaintiff's employment. CHA has articulated legitimate, non-discriminatory, non-retaliatory reason for its decisions.

Further, Plaintiff has failed to produce any evidence that CHA's reason was pretext for retaliation. Under the burden-shifting framework, establishing pretext requires evidence of but-for causation between the retaliation and the adverse action. Lasheley v. Spartanburg Methodist Coll., 66 F.4th 168, 176 (4th Cir. 2023) (internal citations omitted). The plaintiff bears the ultimate burden to prove that retaliation was the actual reason for the action.

Here, Plaintiff has not presented any evidence creating a genuine issue of material fact that the reasons given by CHA were pretextual. Plaintiff has not presented any evidence to cast doubt

on the decisions made by CHA. Plaintiff's own belief and conclusory statements are not enough to establish pretext.

Accordingly, to the extent that Plaintiff has satisfied the *prima facie* elements for retaliation, Plaintiff has failed to show that CHA's legitimate, non-discriminatory, non-retaliatory reasons for its employment decision were pretext for retaliation. Thus, Defendants are entitled to dismissal of Plaintiff's ADA retaliation claim as a matter of law.

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment on all claims raised in the above-captioned matter.

Respectfully submitted,

BOYKIN & DAVIS, LLC

By: s/Timothy J. Boykin
Charles J. Boykin (Fed. Bar #6310)
Kenneth A. Davis (Fed. Bar #9048)
Tierney F. Goodwyn (Fed. Bar # 12146)
Timothy J. Boykin (Fed. Bar #14311)

220 Stoneridge Drive, Suite 100
P.O. Box 11844
Columbia SC 29211

Telephone: 803-254-0707
Facsimile: 803-254-5609

cjboykin@boykinlawsc.com
kdavis@boykinlawsc.com
tgoodwyn@boykinlawsc.com
tjboykin@boykinlawsc.com

Attorneys for Defendants

July 13, 2026
Columbia, South Carolina